## No. 34,869

S. S. Simpson and The McPherson and Citizens State Bank, as Executors of the Last Will and Testament of H. L. Salthouse, Deceased, *Plaintiffs,* v. John McCuish, William Ljungdahl and Marc Boss, as Members of the State Commission of Revenue and Taxation; Bert E. Mitchner, as Director of Revenue; Walter E. Wilson, as Treasurer; G. G. Dixon, as Treasurer of McPherson County, and L. F. Burnett, as Treasurer of Sedgwick County, *Defendants.*

(103 P. 2d 915)

Opinion filed July 6, 1940.

*Mark H. Adams, Charles E. Jones* and *Herman W. Smith,* all of Wichita, for the plaintiffs.

*Vernon C. Rosenstahl, James D. Dye, W. J. Bell,* all of Topeka, *Bert E. Mitchner,* as Director of Revenue, *J. K. Brandon,* of McPherson, *Tom Harley, R. H. Nelson,* both of Wichita, *Jay S. Parker,* attorney general, and *E. V. Bruce,* assistant attorney general, for the defendants.

The opinion of the court was delivered by

DAWSON, C. J.: Our original jurisdiction in mandamus is invoked to untangle a snarl which has arisen in the state's method of refunding an overpayment of inheritance taxes.

The pertinent facts, about which all the litigants are agreed, are these: On March 12, 1938, the late H. L. Salthouse, of McPherson, died testate. He left a considerable estate. His executors, plaintiffs herein, set about its administration, and forwarded to the inheritance tax commission its prescribed form of return, so that the proper amount of inheritance taxes chargeable thereto could be computed.

In the year prior to the death of Salthouse, he transferred several tracts of real estate to one Simpson and wife. The state commission has an administrative rule which requires a satisfactory showing that such transfers made within two years have not been made in contemplation of death. (This administrative application of the statutory rule pertaining to the presumption of gifts made within ninety days of the grantor's death [G. S. 1935, 79-1501] is not challenged in this action.)

The state commission encourages prompt remittance of adequate amounts to satisfy its probable maximum exaction of inheritance taxes, and gives its official assurance that if and when it eventually transpires that they have been overpaid, the overpayment will be duly refunded.

The general routine followed in the payment of inheritance taxes and in the refunding of overpayments has been broadly covered by statute. The state commission notifies the probate court and the

county treasurer of the amount of the tax, likewise the person whose duty it is to pay it. (G. S. 1935, 79-1517.) Payments in accordance with such notification are first covered into the county treasury. (G. S. 1935, 79-1502.) The county treasurer is required to make quarterly remittances of all such collections (less 5 percent) to the state treasurer for the benefit of the general revenue fund. (G. S. 1935, 79-1525, 79-1526, 79-1527.) If it is eventually determined that there has been an overpayment, the state commission makes an order of abatement for the proper amount to be refunded by the county treasurer *"from any legacy and succession taxes in his hands . . . with interest thereon at the legal rate, without any further act or resolve making appropriation therefor."* (G. S. 1935, 79-1517.)

In the instant case, on November 3, 1938, the state commission made a tentative order that the Salthouse estate should pay an inheritance tax of $5,364.12, and it accompanied that order with a communication which, in part, read:

"Under this tentative order, the estate may pay all or any part of the tax as therein determined, to avoid accumulation of interest charges. Should our final order determine the tax to be less than the amount which has been paid, the overpayment will be refunded."

This matter was the subject of some further official correspondence in which the trustees were again assured:

"As we have stated to you before, the purpose of the tentative order as issued by the commission, was to allow the estate to pay the tax as assessed in that order and avoid any accumulation of interest charges. Any deficiency tax, of course, will be assessed in the final order and likewise *should there be any overpayments of taxes, the balance will be refunded."*

The executors complied with the tentative order and paid accordingly.

Eventually the state commission made a final order and determination that there had been an overpayment of $2,289.48, and that—

"The county treasurer of McPherson county is hereby authorized and directed to refund $2,289.48, covering overpayment of inheritance taxes, making the refund from inheritance tax collections.

"It is, therefore, by the director of revenue on this ——— day of Feb. 12, 1940, ordered, that taxes be and they hereby are ordered refunded as set forth herein.

"BERT E. MITCHNER, [Director of Revenue]."

During the interim between the payment of these inheritance taxes and the commission's final order which definitely fixed the proper tax and directed that the overpayment be refunded, more

than three months had elapsed, so the money had been forwarded by the county treasurer to the state treasurer in conformity with the usual routine prescribed by statute. In consequence, the treasurer of McPherson county does not have enough inheritance tax money in his hands to comply with the refunding order. And since large estates are not common in McPherson county, there is little prospect that within any reasonable time the aggregate of inheritance tax collections in any three-months period in that county will be sufficient to meet it.

In the brief of counsel for the commission we are advised that in the administration of the inheritance tax law, this dilemma has occasionally arisen heretofore, and in dealing with it the commission's practice has been to order the requisite refunding payment to be made by some county treasurer who happens to have on hand enough inheritance tax moneys to pay it. It appears that this practice had its inception in certain unreported supplemental proceedings in this court following our decision in *Jones v. Bowman,* 118 Kan. 343, 234 Pac. 953, wherein it was held that the commission should refund an overpayment of $4,500.52 which had been collected from the estate of Harry W. Jones in Johnson county. The county treasurer of that county had forwarded the money to the state treasurer, and it was unlikely that other inheritance tax collections in Johnson county would be made in sufficient amounts within any reasonable time to pay the refund. In Shawnee county, being one of the largest and wealthiest counties of the state, collections of such taxes were considerable, and the sanction of this court was invoked to direct and approve an order of the commission on the county treasurer of Shawnee county to pay it. In that case the theory advanced by counsel for the plaintiff administrator, and acquiesced in by the commission—and as to which this court saw no legal objection—was that the current inheritance tax collections in the hands of the 105 county treasurers do not constitute 105 separate funds, but did constitute a single fund, the net amount of which—and no more—should eventually be remitted to the state treasurer to become part of the state's general revenue. But in actual practice, when these moneys are collected by the county treasurers they occasionally do include overpayments because they are based on merely tentative estimates of the actual amounts due, the commission must of necessity have the right and it was its duty to order refunds to be paid from whatever county treasury

may at the time have sufficient inheritance tax money to pay them. In such situations, so far as the county treasurer is concerned the commission's order is his full acquittance, and is of as much potency as the state treasurer's receipt for his quarterly remittance of such collections.

The supplemental proceedings in this court in *Jones v. Bowman,* supra, were concluded by an order of this court, dated June 17, 1925, which reads:

"Now comes the appellee by his written motion and moves the court for supplemental order herein; and also come the appellants and confess the motion for a supplemental order herein; and thereupon, after due consideration by the court, it is *ordered* that the Inheritance Tax Commission of the state of Kansas, be, and it is hereby required to make the rebate heretofore ordered by this court to the appellee herein out of any succession taxes in the hands of any county treasurer of the state of Kansas." (Journal Supreme Court, 3-D, p. 443.)

This practice has the sanction of operative administration for fifteen years. The legislature has not seen fit to change it, and this court sees no reason to change its ruling quoted above.

It is beside the point to quote the familiar principles of constitutional and statutory law touching the disbursing of public funds, none of which is this court asked to violate in granting the relief to which the plaintiffs are entitled. Plaintiffs' overpayments are not public funds; they are plaintiffs' funds, and the courts do not look with favor upon legal hurdles raised against their recovery. We hold that the defendant commission has the power, and it is its duty, to make good its assurance to plaintiffs and to all to comply with its tentative orders concerning prompt payment of its preliminary estimates of inheritance taxes, which was that if and when the proper tax was determined and an overpayment existed it would be promptly refunded. And that did not mean at the end of a lawsuit.

Touching the power of the commission there can be no cavil. It has been given power, and it is its duty, to make the state's system of collecting inheritance taxes an administrative success. If these plaintiffs must keep tab on the inheritance taxes which may be collected in McPherson county and present to the county treasurer its refunding order once every ninety days, for the next ten or twenty years to receive dribbling items of payment thereon, the administration of this law would be justly subject to public ridicule.

We do not overlook the fact that the official name and title of

the state commission now in charge of inheritance tax matters has been recently changed by the legislature and that an associate functionary, "director of revenue" has been added thereto. Such incidental details are of no consequence here. Neither do changes in the personnel of the commission concern this plaintiff. They take over where their predecessors left off, and the state's governmental affairs, rights, duties and obligations to those who have business transactions with it are not to be prejudicially affected thereby.

The county treasurer of Sedgwick county and others have been properly impleaded in this action for whatever concern they may have in this litigation. The motion of that county treasurer to quash the alternative writ is denied. The restraining order against the state treasurer is dissolved. Judgment in favor of plaintiffs and against the defendants is entered; but for the present no writ will issue—on the assumption that in view of what we have said above, such formality is needless. (See *Kittredge v. Boyd,* 137 Kan. 241, 242-243, 20 P. 2d 811.)

Judgment for plaintiffs.